IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DIRK VAN BOXEL,** | ) | CASE NO. 1:20 CV 2426 |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **UNIVERSAL LOGISTICS USA INC., et al.,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     **Defendants.** | ) | |

This matter is before the Court on the Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(5) filed by Defendant, Internationale Container Transport GmbH ("ICT") (Docket #7) and the Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) filed Defendant, Universal Logistics USA Inc. ("Universal USA") (Docket #8).

**I.    Factual and Procedural Background.**

    **A.    The Complaint.**

Plaintiff, Dirk van Boxel, filed his Complaint against Defendants on September 22, 2020 in the Cuyahoga County, Ohio Court of Common Pleas, Case No. CV 20 937634. Defendants removed the case to this Court on October 26, 2020. The facts as alleged in the Complaint and relevant to Defendants' Motions to Dismiss are as follows.

In late July and early August 2007, Mr. van Boxel, a resident of Cuyahoga County, Ohio,

met with representatives of ICT, a privately held German Corporation, to discuss the potential for Mr. van Boxel to become the managing director of International Cargo Transport (USA), Inc. ("ICT USA"), a wholly owned subsidiary of ICT. (Complaint at Paragraph 5.) Mr. van Boxel had worked for many years in the global logistics industry. (Id. at Paragraph 1.) According to its website, ICT is an international logistics company with offices in Germany "as well as subsidiaries in USA and India" and offers "Seafreight and Airfreight work, comprehensive project services, CIS transport, overland transport (road), customs services and warehouse management." (Id. at Paragraph 3.) In 2007, ICT was operating in the United States through ICT USA. (Id. at Paragraph 4.) ICT USA was organized as a Delaware corporation and located in New York. (Id.) ICT sought to expand its operations in the United States, and it was unhappy with the performance of ICT USA. (Id.)

As alleged in the Complaint, on August 15, 2007, Mr. van Boxel "negotiated a Management Agreement with ICT and ICT USA, pursuant to which he agreed to serve initially as a consultant for ICT and then as the President of ICT USA." (Id. at Paragraph 8.) Mr. van Boxel would serve as a "consultant" for ICT from August 15, 2007 until November 1, 2007, and would thereafter "be entrusted with the executive management of ICT USA as managing director 'President' for a period of seven (7) years . . . ." (Id. at Paragraph 9.) "Pursuant to the Management Agreement, beginning November 1, 2007, Mr. van Boxel was to be engaged by ICT USA and was to receive a monthly salary equivalent to €8,000." (Id. at Paragraph 10.) In addition, Mr. van Boxel was to receive a bonus each year equivalent to 25% of ICT USA's net annual profit. (Id.) Mr. van Boxel was also entitled to receive 25% of the net value of ICT USA at the end of the seven-year period. (Id.) Finally, ICT USA was obligated to provide Mr. van

Boxel with a company vehicle and a cell phone throughout the seven-year term of the Management Agreement and to reimburse him for his reasonable business expenses. (Id.) The Management Agreement was to be governed by Ohio law. (Id. at Paragraph 9.) Mr. van Boxel states that ICT understood that he intended to relocate the ICT USA offices from New York to Cleveland, Ohio and that he would be performing under the Management Agreement in Cleveland, Ohio. (Id.)

Mr. van Boxel states that after execution of the Management Agreement, he undertook efforts to grow ICT's business, including the preparation of a business plan; adding staff; reolocating ICT USA's office to Cleveland, Ohio; and, making sales calls and similar activities. (Id. at Paragraph 11.) Mr. van Boxel initiated and orchestrated the acquisition by ICT of another freight forwarding company. (Id. at Paragraph 12.) Representatives of ICT traveled to Cleveland on multiple occasions to meet with Mr. van Boxel regarding operations and his duties under the Management Agreement. (Id. at Paragraph 13.) Invoices for his management fees were submitted to ICT. (Id.) As alleged by Mr. van Boxel, ICT would issue payment and charge the amount of that payment back to ICT USA, to be recorded on ICT USA's books as a consulting fee for Mr. van Boxel. (Id. at Paragraph 14.)

Mr. van Boxel states that although he had fully performed his obligations under the Management Agreement, ICT, on behalf of itself and as agent for ICT USA, terminated the Management Agreement without cause and without prior notice on July 9, 2008, refusing to compensate Mr. van Boxel thereafter. (Id. at Paragraph 15.) Mr. van Boxel asserts a single claim for breach of contract against ICT and ICT USA's successor by merger, Universal USA. ICT USA was merged into Universal USA on November 27, 2017. (Id. at Paragraph 20.)

Universal USA is a New York corporation that provides freight forwarding and other logistics services to customers. Universal USA is authorized to do business in Ohio and has an office in North Olmsted, Ohio. (Id. at Paragraph 2.) Mr. van Boxel asserts that as a result of the merger, Universal USA is the successor to all of ICT USA's liabilities and obligations, including its alleged liabilities and obligations to Mr. van Boxel under the Management Agreement. (Id. at Paragraph 20)

## II. ICT's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5).

On November 30, 2020, ICT filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for insufficient service of process, arguing that the Complaint should be dismissed because Mr. van Boxel failed to properly effect service in accordance with the Federal Rules of Civil Procedure and the Hague Convention.

Fed. R. Civ. P. 4(f)(1) requires service "by any internationally agreed means . . . that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service of Abroad of Judicial and Extrajudicial Documents." The Hague Convention is a multilateral treaty "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988). ICT is a German Corporation and service of process in Germany requires compliance with the Hague Convention. Germany has established a central authority through which service must be made. *Plastic Molded Techs., Inc. v. Bayerische Motoren Werke Aktiengesellchaft*, Case No. 08 CV 14276, 2009 U.S. Dist. LEXIS 144003, *6 (E.D. Mich. May 19, 2009). Germany does not permit international service by any form of mail.

*Id.* at *7. The Parties do not dispute that the Cuyahoga County Clerk of Courts issued a Summons and copy of the Complaint via registered mail to ICT in Neuss Germany, and did not comply with Germany's requirements for international service under the Hague Convention.

Mr. van Boxel filed his Memorandum in Opposition on December 10, 2020. (Docket #12.) Mr. van Boxel asks that he be permitted additional time to correct the errors in service and/or that the Court excuse his noncompliance to avoid unnecessary expense. ICT filed its Reply Brief on December 24, 2020. (Docket #17.) ICT agrees that under the circumstances, the Court has "broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." ICT explains that Mr. van Boxel has requested and been issued an Alias Summons for ICT by the Clerk of Courts for the Northern District of Ohio (Docket #s 14 and 15) and "acknowledges that quashing [Mr. van Boxel's] original attempted service, and permitting a reasonable time period of time for [Mr. van Boxel] to serve ICT in compliance with the Hague Convention, may be an appropriate remedy in this case." ICT asks the Court to enter an Order quashing service; setting a reasonable deadline for service; and, staying discovery in this action until proper service is complete.

Mr. van Boxel filed a Response to ICT's request that discovery be stayed in this case. (Docket #18.) Mr. van Boxel argues that he has initiated the steps necessary to comply with the Hague Convention, but that the process may take another three months, with the timing at this point completely out of his control. Mr. van Boxel argues that a stay at this point would simply delay proceedings and impact the Scheduling Order previously agreed to by the Parties.

As reflected in the Docket and acknowledged by ICT, Mr. van Boxel has taken steps to perfect service in accordance with the Hague Convention. ICT filed an Answer to the Complaint

on February 2, 2021 and has actively participated throughout this litigation and the Court finds no reason to stay proceedings pending the completion of service. ICT and Universal USA share Counsel in this case. Accordingly, the Motion to Dismiss filed by ICT (Docket #7) and ICT's request to stay discovery are hereby DENIED.

**III.    Universal USA's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).**

Universal USA filed its Motion to Dismiss on November 30, 2020. (Docket #8.) Universal USA argues that the Court lacks personal jurisdiction over Universal USA and that Mr. van Boxel has otherwise failed to state a claim against Universal USA for breach of contract. Specifically, Universal USA argues that Mr. van Boxel cannot establish that any alleged breach of the Management Agreement was proximately caused by Universal USA transacting business in Ohio and, to the extent Mr. van Boxel alleges that Universal USA is liable as the successor by merger to ICT USA, Mr. van Boxel still cannot establish personal jurisdiction or state a claim for breach of contract against Universal USA because ICT USA did not sign the Management Agreement. Mr. van Boxel filed his Memorandum in Opposition on December 10, 2020. (Docket #11.) Universal USA filed a Reply Brief on December 24, 2020. (Docket #16.)

To determine whether personal jurisdiction is proper in a diversity case, district courts must apply the law of the state in which they sit. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. Ohio 1980), cert. denied, 450 U.S. 981 (1981). Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause. *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. Ohio 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010 Ohio 2551, 930 N.E.2d 784, 790 (2010); *Goldstein v. Christiansen*, 70 Ohio St.3d 232,

-6-

1994 Ohio 229, 638 N.E.2d 541, 543 (1994)). Ohio's long arm statute states, in part, as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;

O.R.C. § 2307.382. While the Ohio courts interpret the "transacting business" prong broadly to "permit jurisdiction over nonresident defendants who are transacting any business in Ohio," *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (1990), the Ohio long-arm statute requires a "proximate cause" relationship between the defendant's act and the plaintiff's cause of action. *Brunner v. Hampson*, 441 F.3d 457, 465-66 (6th Cir. Ohio 2006). A mere "but-for" connection is insufficient. *Id.* The Ohio long-arm statute's "arising from" prong has less reach than the Due Process Clause, and, thus, due process need not be considered. *Id.*

Mr. van Boxel alleges that ICT served as agent for ICT USA in negotiating and executing the Management Agreement; that ICT USA was bound by the terms of the Management Agreement and subject to personal jurisdiction in this Court; and, therefore, that Universal USA, as successor by merger to ICT USA,[1] is also liable for breach of the Management Agreement and

---

[1] The Sixth Circuit has explained that "it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. Ohio 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002)). The "surviving corporation in a merger is liable for all obligations of a constituent corporation." *Asa Architects v. Schlegel*, 75 Ohio St. 3d 666, 673 (1996); *Transcon. Ins. Co. v. Simplexgrinnell LP*, Case No. 3:05 CV 7012, 2006 U.S. Dist. LEXIS 48654, at *9 (N.D. Ohio July 17, 2006).

subject to personal jurisdiction in this Court.

Under Ohio law, to bind a principal on the basis of apparent authority, it must be shown that:

> 1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and
>
> 2) the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent: a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts of conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority.

*Orchard Grp. v. Konica Med. Corp.*, 135 F.3d 421, 425 (6th Cir. 1998)(citing *Master Consol. Corp. v. BancOhio Nat'l. Bank*, 61 Ohio St. 3d 570, 576-77, 575 N.E.2d 817, 822 (1991)).

The Management Agreement was negotiated and executed in Ohio and sets forth the obligations of ICT and ICT USA to Mr. van Boxel, along with his obligations to them. Under the Management Agreement, as of November 1, 2007, Mr. van Boxel was employed by ICT USA; would be paid a specified salary and bonus by ICT USA; and, would have company car and cell phone provided by ICT USA. Mr. van Boxel's management fees were recorded on ICT USA's books as consulting fees. Mr. van Boxel prepared a business plan, added staff, and moved ICT USA's existing office from New York to Cleveland, working to grow ICT's business in the United States. There are questions regarding the nature and substance of the communications between Mr. van Boxel and ICT and/or ICT USA relative to the negotiation and execution of the Management Agreement; the relationship between ICT and ICT USA; and, the nature of the merger between ICT USA and Universal USA, which make it impossible for the

Court to determine whether the Court may exercise personal jurisdiction over Universal USA. These issues are more properly resolved with the benefit of discovery and, therefore, may be revisited on summary judgment if appropriate. Accordingly, Universal's Motion to Dismiss (Docket #8) is DENIED.

**IV.     Conclusion.**

For the foregoing reasons, the Motions to Dismiss filed by Defendant, Internationale Container Transport GmbH (Docket #7) and Defendant, Universal Logistics USA Inc. (Docket #8) are hereby DENIED.

A Status Conference remains set for 4/12/2021 at 09:30 AM, to be held telephonically.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: February 26, 2021